UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN LALIBERTE, and all others similarly
situated under 29 U.S.C. 216(b),

    Plaintiff,

v.                                      CASE NO.: 3:21-cv-01179-HES-LLL

KRYSTAL COMPANIES, LLC, d/b/a
KRYSTAL CLEAN; and
FLEETWASH, INC. OF NEW JERSEY
d/b/a FLEETWASH, INC.

    Defendants.

_____

**DEFENDANT FLEETWASH, INC. OF NEW JERSEY d/b/a
FLEETWASH, INC.'S MOTION TO DISMISS AMENDED
COLLECTIVE ACTION COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL AND TO COMPEL ARBITRATION**

    Defendant, Fleetwash, Inc. of New Jersey d/b/a Fleetwash, Inc. ("Fleetwash" or "Defendant"),[1] moves to dismiss the Amended Collective Action Complaint for Damages and Demand for Jury Trial ("Amended Complaint") and to compel arbitration with respect to the claims asserted by Plaintiff, John Laliberte ("Plaintiff" or "Laliberte"), and Opt-In Plaintiffs,

---

[1] As previously noted by Defendants in prior submissions (Dkts. 12, 13, 14, 15, and 17), Plaintiff incorrectly identified Krystal Companies, LLC in the case caption. Fleetwash Inc. of New Jersey ("Fleetwash") does business as "Krystal Klean," not Krystal Companies – an error which Plaintiff continues to perpetuate despite the opportunity to correct it in the filing of his Amended Complaint.

1

Devin Hoffman ("Hoffman") and Christopher LeBlanc ("LeBlanc") (collectively, "Opt-In Plaintiffs"), pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*[2] In support, Defendant states:

## INTRODUCTION

Plaintiff brings this action under the Fair Labor Standards Act ("FLSA"), asserting that Defendants Fleetwash and Krystal Companies, LLC ("Krystal Companies") failed to pay Plaintiff all unpaid federal overtime wages. Specifically, Plaintiff asserts that Defendants deducted a 30-minute meal period from Plaintiff's compensable time, that sometimes Plaintiff was not completely relieved of his duties during this meal period, and that because of the deduction, he sometimes worked over forty (40) hours in a given week.

On February 15, 2022, Plaintiff filed an Amended Complaint, consisting of two (2) counts: (1) collective action for federal overtime wages (Count I); and (2) federal overtime wage violations as to Plaintiff only. (Dkt. 18). Opt-In Plaintiffs filed notices of consent to join contemporaneously with the submission of the Amended Complaint, and as such, their respective FLSA claims are deemed commenced. (Dkts. 20, 21); 29 U.S.C. §256.

---

[2] Fleetwash joins in the Motion to Dismiss Amended Collective Action Complaint for Damages filed by Defendant Krystal Companies, LLC in all respects. Fleetwash expressly reserves the right to file a Motion to Dismiss as to the claims asserted against it pursuant to Rule 12, Federal Rules of Civil Procedure, in the event the Court finds that the claims asserted by Plaintiff or Opt-In Plaintiffs are not arbitrable.

2

Plaintiff's Amended Complaint is due to be dismissed in its entirety as to Fleetwash because Plaintiff and all putative collective class action members are subject to binding arbitration agreements governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq*. Per the terms of the arbitration agreements, Plaintiff and Opt-In Plaintiffs further agreed that if a party filed a lawsuit with respect to claims subject to arbitration, dismissal of the lawsuit was required so that the claims could be appropriately resolved in arbitration. Accordingly, this action is due to be dismissed for lack of subject matter jurisdiction in accordance with Rule 12(b)(1), and Plaintiff and any putative collective action member must file their claims individually in arbitration.

## **LEGAL STANDARD**

The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and internal quotation marks omitted). This policy choice is no different in the employment context. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 122 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context."); Caley, 428 F.3d at 1367 ("[C]ompulsory arbitration agreements are now

3

common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes."). Rather, "consistent with the FAA's text, courts must rigorously enforce arbitration agreements according to their terms, including terms that specify *with whom* [the parties] choose to arbitrate their disputes." Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1329–30 (11th Cir. 2014) (citation and internal quotation marks omitted).

"Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." Curbelo v. Autonation Ben. Co., Inc., No. 14-CIV-62736, 2015 WL 667655, at *2 (S.D. Fla. Feb. 17, 2015) (citations omitted); Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla.1999).

## THE ARBITRATION AGREEMENTS

Plaintiff and all putative class action members are leased employees of South East Personnel Leasing, Inc. ("South East" or "SPLI"). The South East Personnel Leasing, Inc. Employee Leasing Application, which is signed by each prospective employee of Fleetwash Inc., d/b/a Krystal Klean, includes an arbitration agreement and collective action waiver. True and correct copies of

4

the arbitration agreements signed by Plaintiff, Opt-In Plaintiff Hoffman, and Opt-In Plaintiff LeBlanc are attached as **Exhibits 1**, **2**, and **3**, respectively.

The arbitration agreements signed by Plaintiff and Opt-In Plaintiffs are virtually identical. Consent to the arbitration agreement is a condition of employment. (Exs. 1 – 2, ¶16; Ex. 3, Section V, at ¶16). In each, Plaintiff and Opt-In Plaintiffs consented to the following pertinent provisions:

- Agreement to arbitrate all disputes or claims between themselves, SPLI, or Fleetwash arising out of, related to, or in connection with any aspect of the employee's employment or termination, including claims related to unpaid wages or other wage payment or compensation-related claims. (Exs. 1 – 2, at ¶2; Ex. 3, Section V, at ¶2).

- Consent to arbitrate the above-referenced claims, among others, in final and binding arbitration before a single, neutral arbitrator, to be conducted by "the American Arbitration Association ("AAA") under its Employment Arbitration Rules and Mediation Procedures (including the Optional Rules for Emergency Measures of Protection)," the location of which rules were further specifically identified. (Exs. 1 – 2, at ¶¶2, 4; Ex. 3, Section V, at ¶¶2,4).

- Waiver of the right to commence or be party to any group, class or collective action claim. (Exs. 1 – 2, ¶¶9, 11; Ex. 3, Section V, at ¶¶9, 11).

- Agreement that "[i]f a party files a lawsuit in court to resolve claims subject to arbitration, the parties agree that the court shall dismiss the lawsuit and require that the claims be resolved through arbitration as provided herein." (Exs. 1 – 2, at ¶10; Ex. 3, Section V, at ¶10).

- Consent to the interpretation and enforcement of the arbitration provisions in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.* (Exs. 1 – 2, at ¶14; Ex. 3, at ¶14).

- Agreement that, should the arbitration provisions be found to be invalid, unenforceable, or void, the parties expressly waived the right to seek or demand a jury trial. (Exs. 1 – 2, ¶17; Ex. 3, at ¶17).

# ARGUMENT

For the reasons set forth below, Plaintiff and Opt-In Plaintiffs' claims are subject to arbitration. Defendant addresses each of the factors to be considered when determining whether the parties' claims are arbitrable in turn.

**I.    A written agreement exists between the parties containing an arbitration provision.**

The Plaintiff and each Opt-In Plaintiff signed a written agreement with South East containing an arbitration agreement. (Exs. 1 – 3). Plaintiff and Opt-In Plaintiffs agreed as follows:

> By accepting employment, you are agreeing to the terms of this Arbitration Agreement ("Agreement"). You agree and acknowledge that South East Personnel Leasing, Inc. and subsidiaries (collectively "SPLI"), your temporary staffing employer, if any, ("Temporary Staffing Employer"), and [FLEETWASH INC. dba KRYSTAL KLEAN] (your "Worksite Employer"), and you will utilize binding arbitration to resolve all disputes that may arise out the employment context. In consideration of your employment and other good and valuable consideration, including but not limited to the promises herein and the compensation and benefits paid to you, the receipt and sufficiency of which is acknowledged by the parties, the parties agree to the following terms of this Agreement.
>
> …
>
> 2. Any dispute or claim of any kind or nature between you and SPLI, any of the applicable SPLI Entities, your Temporary Staffing Employer, or your Worksite Employer arising out of, related to, or in connection with any aspect of your employment or its termination, including but not limited to claims for breach of contract, negligence, torts, unpaid wages or other wage payment

or compensation-related claims, discrimination, harassment or retaliation in violation of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act, the Fair Credit Reporting Act, or any other federal, state, or local law, will be settled by final and binding arbitration conducted by a single, neutral arbitrator. **In agreeing to arbitrate claims, you and SPLI, the SPLI entities, your temporary staffing employer, and your worksite employer agree to waive the right to have covered disputes decided by a judge or jury.** This Agreement applies to all disputes or claims that arose before and/or after this Agreement went into effect.

(Exs. 1 – 2 at "Preamble;" and ¶2; Ex. 3, Section V, at "Preamble" and ¶2).[3]

South East, South East's subsidiaries, the employee's temporary staffing employer (if any), the worksite employer, and the employee (here, Plaintiff and Opt-In Plaintiffs, respectively), all agreed to "utilize binding arbitration to resolve all disputes that may arise out of the employment context." (Exs. 1 – 2, at "Preamble;" Ex. 3, Section V, at "Preamble").  The agreement further states that "[a]ny dispute or claim of any kind or nature between you and SPLI, any of the applicable SPLI Entities, your Temporary Staffing Employer, *or* your Worksite Employer *arising out of, related to, or in connection with any aspect of your employment or its termination*, *including but not*

---

[3] The language of each arbitration agreement is substantially identical.  There are minor variations among the agreements with respect to which text was bolded and whether bolded text was also identified in all caps.  If bolded or all caps text is reproduced in the text above, it appears in all arbitration agreements at issue in this Motion.  Otherwise, a variation between bold or capped text is not indicated.

7

***limited to*** claims for breach of contract, negligence, torts, ***unpaid wages or other wage payment or compensation-related claims . . . in violation of . . . the Fair Labor Standards Act*** " will be resolved in binding arbitration before a single, neutral arbitrator.  (Exs. 1 – 2, ¶2; Ex. 3, Section V, at ¶2) (emphasis added).

Fleetwash, the worksite employer, is an express third-party beneficiary of the agreement.  (Exs. 1 – 2, at ¶16; Ex. 3, Section V, at ¶16).  As such, Fleetwash has the legal right to enforce the arbitration agreements at issue in this case.  See Rebman v. Follett Higher Educ. Group, Inc., 248 F.R.D. 624, 630 (M.D. Fla. 2008).

## II.     An arbitrable issue exists.

The agreement states that "[a]ny dispute or claim of any kind or nature between you and SPLI, any of the applicable SPLI Entities, your Temporary Staffing Employer, ***or*** your Worksite Employer ***arising out of, related to, or in connection with any aspect of your employment or its termination***, ***including but not limited to*** claims for breach of contract, negligence, torts, ***unpaid wages or other wage payment or compensation-related claims . . . in violation of . . . the Fair Labor Standards Act***" will be resolved in binding arbitration before a single, neutral arbitrator.  (Exs. 1 – 2, at ¶2; Ex. 3, Section V, at ¶2) (emphasis added).

Here, Plaintiff and Opt-In Plaintiffs have each asserted claims against Defendants for unpaid federal overtime wages in accordance with the FLSA. There is no question that the claims asserted by Plaintiff and Opt-In Plaintiffs not only arise out of or relate to Plaintiff and Opt-In Plaintiffs' employment, but also constitute claims for unpaid wages or other wage payment or compensation-related claims. Thus, an arbitrable issue exists.

To the extent there is any dispute regarding the scope of the arbitration agreements, the parties have consented, by clear and unmistakable evidence, that the arbitrator shall rule on the gateway issue of the arbitrability of the claim. The United States Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019). "[A]n arbitration agreement incorporating by reference arbitration rules authorizing the arbitrator to determine his or her jurisdiction over a dispute is "clear and unmistakable" evidence that questions pertaining to arbitrability are for the arbitrator, and not the court." Gorelik v. Dillon, No. 10-20877-CIV, 2010 WL 11553317, at *6 (S.D. Fla. Dec. 15, 2010) (citing cases); see also Terminix Inter. Co., LP v. Palmer Rand Ltd. Partnership, 432 F.3d 1327, 1332 (11th Cir. 2005) (incorporation of the AAA Rules for commercial arbitration showed that the parties had clearly and unmistakably agreed that the arbitrator would decide

9

the issue of arbitrability); Simply Wireless, Inc v. T-Mobile US, Inc, 877 F.3d 522, 528 (4th Cir. 2017), abrogated by Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524 (2019) ("We agree with our sister circuits and therefore hold that, in the context of a commercial contract between sophisticated parties, the explicit incorporation of JAMS Rules serves as 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability."); Reunion W. Dev. Partners, LLLP v. Guimaraes, 221 So. 3d 1278, 1280 (Fla. 5th DCA 2017) ("Where, like here, the language of the contract clearly states that AAA rules govern, then said rules are expressly incorporated into the contract.").

The arbitration agreements at issue specify that arbitration shall be administered pursuant to the AAA's Employment Arbitration Rules and Mediation Procedures (the "AAA Rules"). (Exs. 1 – 2, ¶4; Ex. 3, Section V, at ¶ 4).[4] The AAA Rules in turn provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (AAA Rules, at R6(a)). Accordingly, the parties consented to permitting the

---

[4] The AAA Rules state that "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules." (AAA Rules, R1). Thus, the AAA Rules have been expressly incorporated into the respective arbitration agreements signed by Plaintiff and Opt-In Plaintiffs.

10

arbitrator to determine threshold issues concerning arbitrability, to the extent there is a dispute regarding the same.

## III. The right to arbitration has not been waived.

There are two factors to consider when determining whether the right to arbitrate has been waived: (1) if "under the totality of the circumstances, the party has acted inconsistently with the arbitration right;" and (2) "whether, by doing so, that party has in some way prejudiced the other party." Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1200 (11th Cir. 2011) (citation and internal quotation marks omitted). When determining whether a party has been prejudiced under the second prong, the Court "consider[s] the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc., 906 F.2d 1507, 1514 (11th Cir. 1990). Fleetwash addresses waiver with respect to Plaintiff and Opt-In Plaintiffs below.

### A. Fleetwash has not waived arbitration with respect to Plaintiff.

Plaintiff filed the original Complaint on November 24, 2021. (Dkt. 1). Defendants were served with a copy of the Complaint on January 5, 2022. (Dkts. 8 – 9). The Complaint asserted a single cause of action as to Plaintiff only for federal overtime wage violations pursuant to 29 U.S.C. § 207. On

11

February 9, 2022, following an unopposed extension of time to respond, Defendants filed their respective Answer and Defenses. (Dkts. 12, 14).

Less than a week later, on February 15, 2022, Plaintiff filed his Amended Complaint for a collective action; notices of consent to join the collective action on behalf of himself, Opt-In Plaintiff Hoffman, and Opt-In Plaintiff LeBlanc; and a Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b). (Dkts. 18 – 22). The Amended Complaint asserts that "the total number of class members exceeds 75 hourly laborers" but also alleges that there are "potentially hundreds" of hourly laborers that have been employed by Defendants collectively. (Dkt. 18, ¶¶6, 58).

While Fleetwash filed an Answer and Defenses to Plaintiff's original Complaint, Fleetwash has not waived the right to arbitrate because: (1) under the totality of the circumstances, Fleetwash has not acted inconsistently with the right to arbitrate; and (2) even if the Court finds that Fleetwash did act inconsistently with its right to arbitrate, Plaintiff's Amended Complaint revived Fleetwash's right to compel arbitration.

First, Fleetwash has not waived the right to arbitrate because Fleetwash has not "substantially invoke[d] the litigation machinery prior to demanding arbitration." Gutierrez v. Wells Fargo Bank, NA, 889 F.3d 1230, 1236 (11th Cir. 2018) (citation and internal quotation marks omitted). This case is in its infancy. The lawsuit has been pending for approximately three

12

(3) months. In that time, no discovery has been taken, and no case management plan submitted. The only actions Fleetwash has taken are to file an unopposed motion for extension of time to respond to the original Complaint, file an answer, and file the required corporate disclosure. In similar circumstances, this Court has not found waiver. See Lorusso v. Sun Holdings, LLC, No. 8:14-CV-00822-EAK, 2015 WL 628793, at *3 (M.D. Fla. Feb. 12, 2015) (finding no waiver of right to arbitrate after defendants answered complaint, filed corporate disclosures, and participated in the submission of a case management report); see also Jackson v. Maria D's, Inc., No. 3:20-CV-1441-BJD-PDB, 2021 WL 2868042, at *5–6 (M.D. Fla. May 5, 2021) (collecting cases).

Nor would Plaintiff be prejudiced by being compelled to arbitrate. Assuming the Court found that Fleetwash has substantially participated in litigation, the participation must result in prejudice to the opposing party. "Factors considered in determining prejudice include the length of delay in demanding arbitration and the expense incurred by the opposing party in participating in the litigation process." Davidson v. PDS Tech. Services, Inc., No. 8:10-CV-1755-T-23EAJ, 2010 WL 4639311, at *3 (M.D. Fla. Nov. 8, 2010) Engaging in pre-trial discovery procedures may result in prejudice to the opposing party. Garcia v. Acosta Tractors, Inc., No. 12-21111-CIV, 2013 WL 462713, at *4 (S.D. Fla. Feb. 7, 2013). The party opposing arbitration bears a

13

heavy burden of proof to demonstrate waiver has occurred. <u>Lawrence v. Royal Caribbean Cruises, Ltd.</u>, No. 09-20930-CIV COOKE, 2009 WL 4546633, at *3 (S.D. Fla. Nov. 30, 2009).

Here, nothing about Fleetwash's actions in this case would result in prejudice to Plaintiff if he were compelled to arbitrate his disputes. As previously stated, the case has been pending approximately three (3) months. The parties have not engaged in any discovery. Furthermore, the terms of the arbitration agreements relieve the employee of any significant financial hardship by being compelled to arbitrate. At most, the employee is required to pay a $200 filing fee; the remaining arbitration forum costs are paid by the employer. (Exs. 1 – 2, at ¶7; Ex. 3, Section V, at ¶7). Thus, Plaintiff should be compelled to arbitrate his claim in accordance with the arbitration agreement.

Second, even if the Court were to find that Fleetwash waived the right to arbitrate as to Plaintiff, the right to invoke arbitration was revived when Plaintiff filed his Amended Complaint. When an amended complaint "unexpectedly changes the scope or theory of the plaintiff's claims," the defendant's right to compel arbitration is renewed. <u>Krinsk v. SunTrust Banks, Inc.</u>, 654 F.3d 1194 (11th Cir. 2011); <u>see also</u> <u>Brown v. E.F. Hutton & Co., Inc.</u>, 610 F. Supp. 76, 78-79 (S.D. Fla. 1985) (finding no waiver when plaintiff's complaint "significantly broadened the focus of the litigation in that Plaintiff

14

now alleges damage occurred with respect to the entire course of dealings between the parties—not simply one transaction").

In this case, Plaintiff's Amended Complaint presents a significant expansion in the scope or theory of the Plaintiff's original Complaint, and Fleetwash has the right to compel arbitration at this stage. The scope of the Amended Complaint is substantially different than the scope of the claims asserted in the original Complaint. Krinsk, 654 F.3d at 1203. Instead of litigating against a single Plaintiff with a single cause of action (and frankly, a de minimis claim), Plaintiff's Amended Complaint introduces two (2) additional Opt-In Plaintiffs and creates a potential class estimated by Plaintiff to consist of at least 75—but potentially hundreds—of hourly employees. The fact scenario presented here is analogous to the facts presented in Krink. In Krinsk, the Eleventh Circuit found that a defendant's previously waived right to arbitrate was revived when the plaintiff filed an amended class-action complaint that substantially expanded the class. Id. at 1203. Clearly, amending a complaint in which no collective action previously existed to assert a collective action is no less material a change in the scope or theory of the case than significantly expanding a pre-existing class. A (meritless) collective class action spanning across all Fleetwash employees—irrespective of whether those employees are employed by Fleetwash d/b/a Krystal Klean—in Florida and Georgia for the past three (3) years is a different type of lawsuit on its face

15

than the original cause of action filed by Plaintiff. A collective action changes virtually every aspect of a lawsuit—from the scope of discovery to potential damages. Accordingly, Fleetwash should be permitted to start fresh and invoke arbitration.

### B. Fleetwash has not waived the right to compel arbitration with respect to the Opt-In Plaintiffs.

Fleetwash has not waived its right to arbitrate with respect to the Opt-In Plaintiffs. Fleetwash was first made aware of Opt-In Plaintiffs' claims when they filed their respective Consents to Join this lawsuit. Fleetwash has invoked its right to compel arbitration with respect to each Opt-In Plaintiff pursuant to their arbitration agreements at its first opportunity to do. Thus, the Opt-In Plaintiffs should be compelled to arbitrate their claims individually pursuant to their respective arbitration agreements.

### IV. Plaintiff's Amended Complaint should be dismissed for lack of subject matter jurisdiction instead of stayed pending arbitration.

The typical practice when faced with a cause of action improperly filed in court rather than filed in arbitration is to stay proceedings pending arbitration. 9 U.S.C. § 3. However, arbitration agreements are just like any other contract, and the terms of the contract control. Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1329–30 (11th Cir. 2014) ("[C]onsistent with the FAA's text, courts must rigorously enforce arbitration

16

agreements according to their terms, including terms that specify *with whom* [the parties] choose to arbitrate their disputes." (citation and internal quotation marks omitted)). Further, several Florida district courts have determined that when all issues in a case must be submitted to arbitration, dismissal (instead of staying litigation) is appropriate. See Perera v. H & R Block E. Enterprises, Inc., 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012).

Here, Plaintiff and Opt-In Plaintiffs each agreed that "[i]f a party files a lawsuit in court to resolve claims subject to arbitration, the parties agree that ***the court shall dismiss the lawsuit*** and require that the claims be resolved through arbitration as provided herein." (Exs. 1 – 2, at ¶10; Ex. 3, Section V, at ¶10) (emphasis added). The parties expressly agreed that in the event an arbitrable claim was filed, the lawsuit was to be dismissed—not stayed. Accordingly, Plaintiff and Opt-In Plaintiff's claims should be dismissed per Rule 12(b)(1), Federal Rules of Civil Procedure.

## **CONCLUSION**

For the foregoing reasons, Defendant, Fleetwash, Inc. of New Jersey d/b/a Fleetwash, Inc., respectfully requests entry of an Order dismissing the Amended Collective Action Complaint for Damages and Demand for Jury Trial ("Amended Complaint") and compelling arbitration with respect to the claims asserted by Plaintiff, John Laliberte, and Opt-In Plaintiffs, Devin Hoffman and

17

Christopher LeBlanc, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), the undersigned counsel has conferred with counsel for Plaintiff, and Plaintiff opposes the relief sought herein.

DATED:  March 1, 2022.

                Respectfully submitted,

                **ABEL BEAN LAW, P.A.**

                /s/ Jacqueline A. Van Laningham
                Daniel K. Bean, Esq.
                Florida Bar No.: 0015539
                Primary Email: *dbean@abelbeanlaw.com*
                Karen Ibach Bowden, Esq.
                Primary Email: *kbowden@abelbeanlaw.com*
                Florida Bar No.: 712711
                Jacqueline A. Van Laningham, Esq.
                Florida Bar No.: 1003168
                Primary Email: *jvanlaningham@abelbeanlaw.com*
                100 N. Laura Street, Suite 501
                Jacksonville, FL 32202
                Telephone: (904) 944-4100

                *Attorneys for Defendants,*
                *Krystal Companies, LLC, d/b/a*
                *Krystal Klean; and Fleetwash, Inc.*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on March 1, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants:

Jordan Richards, Esq.
Jake Blumstein, Esq.
**USA EMPOLYMENT LAWYERS-
JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Jordan@jordanrichardspllc.com*
*Jake@jordanrichardspllc.com*

***Counsel for Plaintiffs***

                                  /s/ Jacqueline A. Van Laningham
                                  Attorney